Good morning, Your Honors. Jason Carr, appearing on behalf of Appellant Anthony James Perez. I intend to reserve a minute of my time for rebuttal. Yes, Mr. Carr. Just keep an eye on your clock. This Court will be pleased to know that this appeal does not concern the case of Blakely v. Washington. But Perez raises our five different assignments of error dealing with the guilt base of this trial. And those five assignments of error can all be interwoven by this one theme, which is that the government consistently and successfully sought to introduce to the jury prejudicial information not relevant to the charges. In the same token, the government also successfully endeavored to keep from the jury exculpatory information that the jury could have used in its deliberations. And what the most interesting issue out of the five issues is the multiplicity argument. And what makes it interesting is that the government, during the 29A motion conference, candidly admits to the district court that it didn't feel and did indeed knowingly file an unlawful indictment. And I'll note to the Court, if you look at Excerpt for Records, page 1, the original indictment, it is charged correctly. It charges the firearm and the ammo in one count. This Court's precedent indicates very clearly in cases such as Solkiewicz, which I never can pronounce, S-Z-A-L-K-I-E-W-I-C-Z and Wigna, that only one count of felon in possession pertains even to the possession of multiple firearms or ammunition if the possession occurs at the same temporal time frame. In this case, the government charged the indictment correctly. Once it became apparent that Mr. Perez wished to exercise his constitutional right to a trial, the government responded by filing a six-count indictment where they charged in different counts each different type of ammunition. During the 29A motion, which the Court will find begins on Excerpt for Record 149, we sought to have the extra counts dismissed before the jury deliberated upon the counts. And the government candidly admits that they recognized that there is possible prejudice that derives from filing an account, an indictment that is multiplicitous. And they recognize that the case law sees this danger and that there is indeed a danger the jury will believe that the defendant has committed multiple crimes when, indeed, the law states in this case clearly that he committed only one. But what the government goes on to say is that in the case in which the prosecutor was involved in, United States v. Matthews, this Court issued a ruling saying, but the defendant has virtually no remedy on appeal to correct this illegality. So what has been created in the law is legal error without redress. And the government has quickly rushed in to fill this vacuum. They recognize that what they're doing is illegal, but take advantage of the fact that the Court has not provided us a remedy for this on appeal. And the question for this Court is that the type of conduct that is appropriate for the government to engage in. Is it appropriate for the government to take advantage of a legal loophole in order to convict a defendant? And what makes this case remarkable is that, in fact, the government's concession is on the record. They knew it was illegal. They're doing it anyways because they say, I can't, I have no remedy on appeal. Well, in some ways it could help the defendant, couldn't it? Well, you can make that argument that the jury could split what they, which, in fact, they did here. In fact, here the jury said he didn't have some of the bullets. So if they were all mushed together, then the jury, you know, one juror might say he had bullet one and one juror say he had bullet two. So once it's separated out, the jury can pick and choose. I think there's only one court that's ever really made it a principle that somehow the numerous indictments lead to a reversal. No court I think has, in fact, I don't even think that court reversed, actually. So the point is it does help in the sense that in a case, in a case where all the evidence would come in anyway. Now, it could be a case where it wouldn't, but here it would have come in anyway. That's pretty clear, whether it was one or six, right? That's true. So here actually what happens is the jury peels off two and then at sentencing the judge peels off the rest of them, right? That is essentially what happened. The jury found that Mr. Prez did not possess the ammo that was found in the garbage can, but did possess the ammunition that was found in the pants he was wearing, which he tried to introduce a statement saying that the pants weren't his. The point is it can go either way, Judge Fernandez. I mean, you can say, well, the jury can split the baby here and enter a split verdict and that helps the defendant, but maybe it doesn't. If the jury was forced to focus in and enter a deliberation on the count as guilty or not guilty on the single count, then that can aid the defense by making the jury really focus in on the issue, which is did he possess the same ammunition and gun at the time in question. Well, they really did focus, and they said he possessed some of them and he didn't possess others. But the reality of jury dynamics is that if there is residual reasonable doubt, that sometimes other jurors will convince the holdouts to go along with the verdict because, well, we'll quit them on some of the counts and convict them on the others. I don't know what legal principle we write about. We all know jury dynamics. What we do know in this case is that all this evidence would have been in front of the jury anyway. So it's not a question of sneaking in some evidence that you couldn't have snuck in. All would have been there anyway. At the end of the day, he suffers no harm. He may have – well, we don't know. He may have really suffered a great benefit because the jury peels off a couple of them. So the jury obviously isn't confused. They're not stupid. They're taken one by one, and they're forced to decide on each one of them, the question of possession. And they do. So if we're going to start talking that kind of dynamic stuff, then it seems to me it's one way or the other, as you say. Who knows? Well, there's two points there. For what it's worth, our clear preference as a defense, our evaluation of what would be prejudicial to present what it wouldn't be is that it be in one count. It's clear. Our preference, it's all over the record here, that we wanted one count, not six, and that it seems to us that when a jury gets a six count rather than a one count indictment, that it does have this carryover prejudicial effect. It makes the defendant look more guilty than, in fact, he may be. You have about three minutes left. One of your other issues was the admission of the 9-11 telephone call. I did. Did you want to address that? I would like to address that. The government at the trial level argued that this was not hearsay because it was only offered to show the effect on the listeners, in this case the police. And the fundamental fallacy with that, of course, is the police never listened to the 9-11 tape. They were just directed to the resident by a dispatch blurb that appears on their computer console and their cruisers. Putting that aside, the government argues that to the trial court, this is just offered for effect on the listeners, but then argues the evidence as substantive evidence. And, in fact, in their closing argument, they read the 9-11 transcript. And they love the 9-11 transcript in this case. Why? Because it's very, very prejudicial, very prejudicial to Perez, and also has very little probative value to the issue at hand. If you read the 9-11 transcript, which is in the excerpts of record, it doesn't really have any real bearing on whether or not Mr. Perez possessed this ammunition, this firearm, in his mother's residence on that day. What it does talk about is him threatening his mother with a knife, about him setting fire to things randomly in the kitchen. It's just a very prejudicial, domestic-type situation. That certainly had an emotional impact on the jury. Very, very prejudicial, very, very low probative value. And I would also argue to the jury that we are somewhat prejudiced by the fact that the government switches gears on appeal, announcing, well, this comes into their hearsay. But some probative value, right? Because his theory is, gee, I didn't go there to do anything bad. I just went there to change my clothes. And it sort of has the effect of indicating maybe he was there for more than changing clothes, right? That's not our theory, though, Judge Fernandez. In fact, we would concede he went in there and did bad things. Our theory is that he went in and did bad things, but he didn't possess this firearm. We're not here arguing that he didn't go in there and create an ugly scene with his mother and do things that are heavily inappropriate. In fact, that's our point, that Mr. Perez was doing things that are heavily inappropriate and things that are going to cause the jury to view him with a jaundiced eye. But those things are not relevant to the charge of whether or not he possessed the firearm. His argument was, no, I didn't do it. I just came by to change my pants and such. And I think he would like to say, and guess what? Those bullets happened to be in the pants pocket somehow. Strangely enough, that's where they were, unless my mother had planted guns and things around and is trying to sneak out of liability on her own. So it's just sort of a good guy just came by and changed my clothes to change my pants, and these bullets showed up in them. And this does try to indicate he wasn't there just to change his pants and leave. But, Judge Fernandez, that's not necessary to our theory that he was just there to change his pants. Our theory is he did change his pants, and there's evidence in the record there's a lot of spare clothing there because there were landlords who, when the tenants left, they left their stuff in the garage. But that's not necessary to our theory that he didn't do any of this other stuff. It's just that our theory was he did change his pants while he was in the residence. Now, see, I'm running out of time, so I'd like to let the government have their say. All right. Thank you. May it please the Court, Counsel. My name is Ray Gatinella, and I'm an assistant United States attorney from the District of Nevada. The District Court properly dismissed the multiplicitous accounts in this indictment, Your Honors, prior to the judge sentencing the defendant. The defendant, I will point out, at trial only objected to counts 1 through 5 as being multiplicitous. Count 6 was the count dealing with the firearm. Counts 1 through 5 dealt with the ammunition. Counts 1 and 2 dealt with the ammunition that was found in his rear pant pocket. Count 3 dealt with the ammunition found in his front pocket. Count 4 and 5 dealt with the ammunition that was found in the trash can. And that's what he objected at trial as being multiplicitous. Is this the usual way the government and the District of Nevada files these cases? On occasion, whenever there's ammunition, that are found in different locations, Your Honor, yes. Even at the time of the arrest for having a gun in possession, you know, being in possession of a gun? The government has done this or has filed similar indictments in the past, Your Honor. Is this the regular practice of the government? I won't go so far as to say it's the regular practice of the government. I'm only familiar in particular with this case and just a few other limited cases. However, this Court, Your Honor, has addressed this very same issue in United States v. Matthews. In that case, the defendant sold three firearms to an undercover agent. Two of those firearms were stolen. The government then indicted the defendant on five counts. Three counts for felon in possession of the firearms and two counts for possession of stolen firearms. The jury found him not guilty of the two counts of the possession of stolen firearms, but did find him guilty of all three counts of felon in possession. Prior to trial, the defendant in that case filed a motion to dismiss the multiplicitous counts in that case, and the trial court denied the defendant's motion. In that case, the court provided some strong language with regard to some guidance when this issue does arise, and that court stated that the chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense. And the court went on to say that in that case, by the court dismissing two of the three counts before the defendant was sentenced, the district court ensured that the defendant did not face more than one felon in possession conviction. The court did say theoretically a new trial may be available as a remedy. However, in circumstances like these where the jury considered a multiplicitous indictment, but the defendant was sentenced only under one count, this court has rejected such a remedy, where the government would have introduced exactly the same evidence had the indictment contained only one count. So there's the question presented for the court, is whether or not this court, whether or not at trial, all of the evidence would have came in with regard to counts one, two, and three. Well, I think the defendant's raising an additional challenge, which is that knowing this and knowing Matthews, why did the government maintain multiple counts? I mean, the defendant's claim is this is intentional misconduct to create a prejudicial atmosphere where the jury is facing multiple charges, even though the government knows from the get-go that there can only be one sentence for all of these multiple counts. Well, in that case, Your Honor, if the government were to have put all of these, all of the five counts into one indictment, it may have caused some jury confusion because the jury may have wanted to state that the ammunition in the trash can we don't believe that he possessed, but we do believe he possessed the ammunition in his pant pocket. Or perhaps furthermore, because we have different types of ammunition, the ammunition in the back pant pocket I believe was a .357 caliber type ammunition, which was the same caliber that the handgun was, and there was 9-millimeter ammunition in his front pocket. The jury may have chose to believe that, for whatever reason, he knowingly possessed the same ammunition that belonged to the gun but not the 9-millimeter handgun. Well, the defendant is saying at that point prior to the trial, don't do me any favors. This is your only one count. And are you suggesting the government was trying to make it harder to obtain a conviction by making sure the jury agreed upon the same ammunition? Well, I think perhaps the government may have had some duplicitous concerns as well at the time. Sometimes, as the Court is very well aware, in making these charging decisions, sometimes whenever you start to put two of these counts into one count, then the objection later will be that the indictment is duplicitous. But nevertheless, Your Honor, the ñ any ñ there were ñ furthermore, there was no prejudice because all of this evidence would have came in anyway. The jury would have heard about all of the ammunition that was found on his person and in the trash can. With regard to the 911 tape, Your Honor, in the defendant's brief, he does ñ he states that the government did not establish a hearsay exception to the 911 tape. However, that 911 tape, there are several hearsay exceptions to that tape, and one of them is a present sense impression, another excited utterance, and also records of regularly conducted activity. The defendant makes reference to a case, Bemis v. Edwards, in his brief. And in Bemis v. Edwards, that was a case where the plaintiff sued the police department for use of excessive force. The arrest of the defendant occurred outside the house. And in that case, you had an individual who was standing at the window and he was observing all of the events of the arrest. He was then relaying that information to the declarant who was on the phone with the 911 operator. The declarant was then just reiterating the statements that the person was observing at the window. In that case, the court held that those statements in the 911 tape were not present sense impressions. Look, it looks quite present sense-y and it looks quite excited utterance-y. The question is, how relevant does it look? Well, it provides a background contextual evidence to this offense. The events that were occurring at the house, at the time, or closely near the time the defendant was ñ The charge, what's the charge? He's a felon in possession of a gun and, in this case, bullets. Yes. Why is all that other stuff necessary to prove that? Well, Your Honor, it's necessary to show that the offense did not occur in a vacuum. And it also goes to show why the police ñ He's either a felon. I mean, he's a felon. I guess there wasn't a dispute about that. Right. In possession of a weapon and ammunition. Yes. I do believe that there was some testimony that the weapon was, in fact, found in the garage. And that the defendant, when he was arrested, I believe was in the kitchen. And the government would have to establish that at one time or another the defendant was in the garage. And during the 911 tape, there were admissions by Ms. Cordova where she is stating that the defendant was in the garage and I believe broke down the door coming out of the garage, which would then establish the defendant was not only in the garage but had access. Did she testify at trial? Subsequently, she did testify at trial. And it wasn't possible for the government just to ask her to tell her story? And the government did ask her to tell her story. And getting back to your question with regard to prejudice in this case, Your Honor, much of what was said in this 911 tape later on came out in trial anyway, not only through Ms. Cordova's testimony but also Officer Christensen, Officer Heckler, Officer Sabino, and Officer Swan. So with regard to the defense's, you know, complaint that this caused undue prejudice, the jury was going to hear about this testimony anyway. The defense could have objected perhaps to these other officers testifying to the same stuff as being cumulative. But, of course, at the time that the tape was offered, it was not cumulative at that time because these officers hadn't testified. So thank you. If you just give me 30 seconds, I'll make two brief points. A note on ER 8, we offered to stipulate that Perez was in the residence and the officers lawfully encountered him in the residence. I'd also note that Judge Fernandez, you mentioned he was in the garage? No, but as the Court noted, that came out on the testimony of Ms. Cordova and it also came out through the testimony of the officers. This is like cumulative, and as the Supreme Court said in Old Chief, probative value is necessarily diminished greatly when the evidence is merely cumulative. When you have highly prejudicial evidence that's merely cumulative, then the 403 balancing test falls in favor of the defendant. Now, Judge Fernandez, you did mention that you thought there was only one case that talks about the danger of multiplicity at the trial level. And sitting there, listening to the government, I found three cases that talk about this. There's United States v. Carter, 576 F2D 1061, 3rd Circuit, 1978. I think those are cited in your briefs. They are, Your Honor, they are. And then there's the 6th Circuit case. None of them did they find that it resulted in the reversal of the case. That is true, and we would be in a different posture here if it wasn't for the fact that the government did something knowingly. And I would submit that changes the standard of review. And I will sit down. Thank you very much for listening to my argument. Thank you very much. The matter will stand submitted. The next argument on the calendar is United States v. Harmon.
judges: Fernandez, Paez, Clifton